IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA   ) | |
|                            ) | |
|       Plaintiff            ) | |
|                            ) | |
| v.                         ) | CR-06-BE-273-S |
|                            ) | |
| FRANCISCO ALMAZAN, et al., ) | |
|                            ) | |
|       Defendants.          ) | |

MEMORANDUM OPINION

Before the court are motions to suppress evidence obtained by federal and state officers in this criminal action against the defendants (docs. 59, 42, 44, and 48). For the reasons stated below, the motions are due to be granted in part and denied in part.

I. INTRODUCTION

This case arises from the arrests of Francisco Almazan, Jr., Esmerelda Jaimez, Jose Alberto Landaverde, Larry Eugene Samuels, and Sandra Vences-Jaime for conspiracy and trafficking in cocaine. In May, 2006, agents of the Shelby County Drug Enforcement Task Force ("SCDETF") and the federal Drug Enforcement Agency ("DEA"), led by DEA agent Wilson, conducted a drug bust by which they had a confidential source ("CS") meet with Defendants Samuels, Almazan, and Landaverde at a Residence Inn in Shelby County, Alabama. The CS arranged to purchase a large quantity of cocaine from the three defendants. At the exchange, police arrested Samuels and Landaverde in a hotel room at the Residence Inn. Almazan was arrested in his truck outside the hotel room. Inside the hotel room, agents recovered over four kilograms of cocaine hydrochloride carried into the room by Landaverde.

Defendant Landaverde was handcuffed and placed in police custody while in the hotel room. He was not warned of his *Miranda* rights. Police then questioned Landaverde about his identity and about where he was staying in the Birmingham area. Landaverde revealed that he and Almazan were staying in the Hampton Inn, also in Shelby County, Alabama. At the hearing on the motions to suppress, DEA agent Wilson acknowledged that his intention in asking Landaverde these questions was to further the investigation.

Based solely on Landaverde's statements, four to five agents went to the defendants' rooms at the Hampton Inn. At that time, they were unaware of who or what might be found in the hotel room. Agents knocked on the door of the hotel room. Defendant Jaimez opened the door. When agents asked if they could enter the room, Jaimez stepped aside to allow them to do so. Multiple agents entered the room to secure it. Once the room was secure, one or two agents remained inside. In addition to Defendant Jaimez, Defendant Vences-Jaime was inside the hotel room watching over some children. Agent Wilson say a "brick" of cocaine clearly visible near the rear of the room. An agent sat down with Defendant Jaimez and explained to her in Spanish a consent to search form which was written in Spanish. Defendant Jaimez signed the consent to search form. Agents then searched the room and seized the cocaine, scales, and a vacuum sealer. Jaimez and Vences-Jaime were placed under arrest. Officers later determined that Defendants Jaimez and Vences-Jaime are sisters. Jaimez is married to Landaverde, and Vences-Jaime is married to Almazan.

## II.  LEGAL DISCUSSION

Defendants Landaverde, Almazan, Jaimez, and Vences-Jaime filed motions to suppress all evidence found in the hotel room. In their briefs and at oral argument, the Defendants

expanded their motion to argue for suppression of Landaverde's statement that he was staying at the Hampton Inn as an unwarned, coerced statement under *Miranda v. Arizona,* 384 U.S. 436 (1966). They have further moved to suppress all evidence obtained as a result of Landaverde's statements as "fruit of the poisonous tree" under *U.S. v. Terzado-Madruga,* 887 F.2d 1099 (11th Cir. 1990). Finally, the Defendants have moved to suppress all evidence seized at the Hampton Inn as the products of a non-consensual search under *Schneckloth v. Bustamonte*, 412 U.S. 218, and *U.S. v. Francis*, 140 Fed.Appx. 184 (11th Cir. 2005).

The government, in turn, urges that Landaverde's statements and the evidence seized as a result of those statements should be admitted because the questions demanded of him were "routine booking questions" under *Pennsylvania v. Muniz*, 496 U.S. 582 (1990). Further, the government asserts that even if the statements are inadmissible, the physical evidence seized as a result of those statements is admissible under *United States v. Patane*, 542 U.S. 630 (2004). Finally, the government claims that it obtained the proper consent to search the Hampton Inn room and that evidence seized during that search should be admitted.

**A. Landeverde's Unwarned Statements**

The Supreme Court's ruling in *Miranda* provides that prosecutors "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of precedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). *Miranda* creates a presumption of coercion in custodial interrogations unless the proper specific warnings are given to the defendant. *Id.* at 467. Statements obtained without compliance with the rule will be excluded at trial. *See Id*. at 444. However, this exclusionary rule does not extend to all evidence

obtained based on statements made by a defendant in custody. *See, e.g.*, *Pennsylvania v. Muniz*, 496 U.S. 582 (1990)(holding that the privilege against self-incrimination does not protect criminal defendants from being compelled to produce physical evidence); *United States v. Patane*, 542 U.S. 630 (2004)(holding that *Miranda*'s presumption of coercion does not apply to non-testimonial evidence, which may be admitted even where obtained without specific warnings by the police).

**1. The "booking" exception**

The "booking" exception to the *Miranda* rule does not cover the Government's use Landaverde's statements in this case. "The [constitutional] privilege against self incrimination protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." *Muniz*, 496 U. S. at 588. (citing *Schmerber v. California*, 384 U.S. 757, 761 (1966)). Routine booking questions are generally non-investigative because they are not intended to elicit an incriminating response, but instead are related to police officers' administrative concerns. *Id*. at 600. Therefore, such questions are not excluded by the *Miranda* rule. *Id*. However, where evidence exists that an officer asked questions for purposes other than booking, the answers elicited may not be admissible. *See United States v. Sims*, 719 F.2d 375 (11th Cir. 1983); *United States v. Sweeting*, 933 F.2d 962 (11th Cir. 1991); *Rhode Island v. Innis*, 446 U.S. 291 (1980)(holding that interrogations under *Miranda* involve words or statements that the police should have known would elicit an incriminating response).

In *Sims*, officers questioned the defendant about his address and telephone number for the purpose of identification. 719 F.2d at 378. The Eleventh Circuit held that such identification

information was non-investigative and, therefore, did not violate the defendant's Fifth Amendment rights under *Miranda*. *Id*.   Likewise, in *Sweeting*, the court held that an officer's request for routine booking information was not an interrogation under *Miranda*, even though the information was later found to be incriminating.  933 F.2d at 965.  However, the *Sweeting* court placed particular emphasis on the fact that no evidence indicated that the questions were intended to elicit anything other than routine booking information. *Id*.

The facts of this case indicate that the government sought information not only to identify the Defendant Landaverde but also to advance its investigation.  Agent Wilson testified at a hearing on this motion that he intended to go to the location that Defendant Landaverde revealed to him.  Specifically, he testified that he anticipated someone might be there waiting to collect money from the defendants.  Shortly after questioning Landaverde, Agent Wilson and other officers *did* proceed to the Hampton Inn room where the defendants were staying.  At the time of the questioning, Agent Wilson was not entering information taken from Landaverde in any sort of arrest report or booking sheet.  Agent Wilson's questions were investigatory in nature and were not merely routine booking questions.  Therefore, the answers to those questions are presumed under *Miranda* to have been coerced and, therefore, excludable.  Accordingly, Landaverde's statements will be inadmissible against him at trial to protect his privilege against self-incrimination under the Fifth Amendment.

**2. Physical evidence**

Even though Landaverde's statements are ssuppressed against him or against the other defendants, the physical evidence seized as a result of those statements is not subject to suppression.  Although *Miranda*'s prophylactic rule sweeps beyond the Fifth Amendment

5

privilege against self-incrimination that it is designed to protect, extensions of the rule must be grounded in protection of the right against self-incrimination. *See Patane,* 542 U.S. at 639; *Withrow v. Williams*, 507 U.S. 680, 690 (1993). The procedural safeguards required by *Miranda* are not constitutional rights in themselves, but are merely means of ensuring those rights. *See Withrow v. Williams*, 507 U.S. 680, 690 (1993). Tangible evidence obtained as a result of a statement does not implicate the Fifth Amendment protection against self-incrimination. Evidence obtained as a result of unwarned statements is not inadmissible at trial, provided those unwarned statements were voluntary. *Id*. at 643. Thus, evidence gained through unwarned statements will only be excluded where the evidence shows *actual* coercion, and *Miranda*'s presumption of coercion will not apply toward such non-testimonial evidence. *Id*.

In this case, no evidence exists that the police in any way coerced Landeverde into disclosing that he and the other defendants were staying at the Hampton Inn. The defendants' assertion that the totality of the circumstances indicate coercion is simply incorrect. While the facts indicate that Landeverde was in handcuffs and was not free to leave, they do not show that he was under any pressure to answer questions.

The defendants argue that the exclusionary rule extends to evidence obtained both directly and indirectly as a result of a constitutional violation, according to *U.S. v. Terzado-Madruga*, 897 F.2d 1099 (11th Cir. 1990), and *Weeks v. United States*, 232 U.S. 383 (1914). Yet both of these cases dealt with violations of the defendants' Fourth Amendment rights against unreasonable searches and seizures. *See also Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963). While exclusion may be appropriate upon a Fourth Amendment violation, the Fifth Amendment's protections are limited to testimonial evidence. *See Patane,* 542 U.S. at 642.

Therefore the defendants' "fruit of the poisonous tree" argument must fail.

**B. Jaimez's Consent to Search the Hampton Inn Room**

Under the Fourth and Fourteenth Amendments, searches undertaken without a warrant are generally unreasonable *per se*. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). One exception to this rule is a search conducted with the voluntary consent of one with the authority to grant such consent. *Id*. Yet, where a prosecutor relies on consent to prove that a search was valid, he must demonstrate that the consent was voluntarily given. *Id*. at 221. Where a search is conducted without proper consent, any evidence discovered will be inadmissible at trial. *See Mapp v. Ohio*, 367 U.S. 643, 649 (1961). Consent granted by one who has authority over the premises is valid against an absent, non-consenting person with whom that authority is shared. *U.S. v. Matlock*, 415 U.S. 164 (1974).

Voluntariness of consent is to be determined from the totality of the circumstances. *Scheckloth*, 412 U.S. at 2047-48. In examining the circumstances, courts consider the characteristics of the accused as well as other conditions surrounding the encounter. *See United States v. Watson*, 423 U.S. 411, 424 (1976). The Eleventh Circuit has specifically listed these factors as relevant to a voluntariness inquiry:

1. Voluntariness of defendant's custodial status;
2. Presence of coercive procedure;
3. Extent and level of defendant's cooperation with police;
4. Defendant's awareness of his right to refuse consent;
5. Defendant's education and intelligence;
6. Defendant's belief that no incriminating evidence will be found.

*United States v. Francis*, 140 Fed.Appx. 184, 187 (11th Cir. 2005).

In this case, each of the defendants were adults and no one has raised any question

regarding the intelligence or capacity of the defendants. While the police entered the room at the Hampton Inn with their guns "exposed," no officer drew a weapon. Nor does any evidence suggest any other "coercive procedure." Defendant Jaimez, who had authority to grant consent to a search of the hotel room she shared with the other Defendants, sat for roughly ten minutes as an officer explained a consent form to her in her native tongue. She did not assert in any way that she felt any particular fear or pressure when signing the consent to search form. Therefore, the facts of the case indicate that consent was voluntary and that no evidence should be excluded on the basis of a Fourth Amendment violation. Accordingly, motions to suppress the evidence seized from the Hampton Inn room based on the lack of a warrant is denied.

## V. Conclusion

Defendant Landaverde's statements to Agent Wilson were made without the procedural safeguards required by *Miranda*. Further those statements were not made in response to routine booking questions, but to questions intended to advance the government's investigation. Therefore, the motion to suppress Landaverde's statements to Agent Wilson is due to be granted.

Despite the inadmissibility of Defendant Landaverde's statements, the physical evidence obtained as a result of those statements is not protected under the Fifth Amendment exclusionary rule. Accordingly, the defendants' motion to suppress the evidence seized at the Hampton Inn room on the basis of a *Miranda* violation against Landaverde is denied.

Defendant Jaimez's consent to the search of the Hampton Inn room was both valid and voluntary. She had authority to consent to a search of the hotel room, and was not coerced or pressured in any way to do so. The motions to suppress the physical evidence obtained at the Hampton Inn room, therefore, shall be denied.

A separate Order will be entered contemporaneously with this memorandum opinion.

DONE and ORDERED this 25th day of October 2006.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE